IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., | |
| Plaintiff, | 8:18-CV-191 |
| vs. | MEMORANDUM AND ORDER |
| VICTOR RODRIGUEZ, individually and d/b/a VICTOR'S MEXICAN RESTAURANT, and VICTOR'S MEXICAN RESTAURANT, LLC, an unknown business entity d/b/a/ VICTOR'S MEXICAN RESTAURANT, | |
| Defendants. | |

This matter is before the Court on the plaintiff's motion for default judgment (filing 16). The Court will grant the plaintiff's motion.

## BACKGROUND

The plaintiff, J&J Sports Production, Inc., contracted for the exclusive nationwide distribution rights to the May 2, 2017 broadcast of the championship boxing match between Floyd Mayweather, Jr. and Manny Pacquiao. Filing 1 at 5. The contract included all under-card fights as well as fight commentary. J&J entered into sublicensing agreements with commercial entities throughout North America granting limited rights to publicly exhibit the broadcast in the sublicensees' commercial establishments. Filing 1 at 5-6.

The defendant, Victor Rodriquez, is identified as the owner of Victor's Mexican Restaurant in Omaha. Filing 16-2. On the evening of the fight, a private investigator retained by J&J visited Rodriquez' restaurant and saw J&J's broadcast on a single television located in a corner of the restaurant near

the door. Filing 16-3. The investigator estimated that the television was either 32 or 40 inches, and that there were between 30 and 33 customers in the restaurant at the time. The investigator reported seeing only six tables in the restaurant and estimated that the building's capacity was 50 persons. There was no cover charge when the investigator entered the restaurant. The first employee that approached the investigator did not speak English. The investigator ordered a burrito from a second waiter. Photographs the investigator took in the restaurant before the Mayweather-Pacquiao fight began show several men sitting at tables, but not paying particular attention to the broadcast.

J&J represents that at no time did it sublicense the broadcast to Rodriquez or to Victor's Mexican Restaurant. Filing 16-4 at 2. Moreover, because J&J held the exclusive commercial distribution rights, Rodriguez could not have obtained the broadcast lawfully from a different distributor. J&J did not provide the Court with any evidence regarding how the restaurant was receiving the broadcast—whether by satellite or cable connection. Neither was the Court provided evidence regarding whether the investigator observed a satellite dish attached to the restaurant structure, or a cable box or cable line running from another part of the building to the television in the corner of the restaurant.

DISCUSSION

When a default judgment is entered, facts alleged in the complaint—except as to damages—may not be later contested. *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010); *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). It remains for the Court to consider whether the allegations in the plaintiff's complaint constitute a legitimate cause of action, since a party in default does

not admit mere conclusions of law. *Id.* Therefore, although the allegations of the plaintiff's complaint are admitted, *see id.*, it is still necessary for the Court to determine the plaintiff's damages based upon the evidence. *See* Fed. R. Civ. P. 55(b)(2)(B); *Brown v. Kenron Aluminum & Glass Corp.*, 477 F.2d 526, 531 (8th Cir. 1973). And even before that, it is incumbent upon the Court to ensure that the unchallenged facts constitute a legitimate cause of action before entering final judgment. *Marshall*, 616 F.3d at 852-53.

So, the task for the Court is, first, to consider the allegations of the complaint to ensure that the plaintiff has stated a legitimate cause of action with respect to each of its claims for relief. If a claim for relief has been stated, the Court must then consider the plaintiff's damages, which in this case may be the plaintiff's actual damages, or statutory damages, together with enhanced damages for a willful violation.

J&J's complaint alleges two statutory causes of action. The first, pursuant to 47 U.S.C. § 605(a), concerns interception of a cable television broadcast over the air, such as by interception of a satellite signal. The second cause of action is pursuant to 47 U.S.C. § 553 and concerns interception of a cable network broadcast. The difference between the two claims is whether the signal is intercepted over the air, or from the cable system itself. *See, United States v. Norris*, 88 F.3d 462, 469 (7th Cir. 1996); *J&J Sports Productions, Inc. v. Turrubiartes*, No. 1:13-cv-1783, 2017 WL 840882, at *2 (S.D. Ind. March 2, 2017). J&J abandoned its cause of action pursuant to § 553 in its motion for default judgment and now elects to proceed to judgment only on its claim pursuant to § 605(a). Having reviewed the complaint, the Court finds that J&J has stated a claim for relief pursuant to § 605(a). Accordingly, the Court will enter default judgment and award damages.

J&J seeks an award of statutory damages in the amount of $10,000 for Rodriguez' interception of the broadcast, and an additional award of $30,000 claiming that Rodriguez' conduct was willful. Section 605(e)(3)(A) provides "[a]ny person aggrieved by a violation of subsection (a) . . . may bring a civil action in a United States district court." Section 605(e)(3)(C)(i) provides that actual or statutory damages may be awarded "at the election of the aggrieved party." Here, J&J has opted for statutory damages. In that regard, "the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." § 605(e)(3)(C)(i)(II). Having reviewed the pleadings and submissions in support of J&J's motion for default judgment, the Court finds that an award of $3,000 is just under the circumstances for Rodriguez' interception of the broadcast. The cost of the broadcast for a Rodriquez' commercial venue was $3,000. Filing 16-4 at 18. It is certainly just for J&J to recover the fee it would have been paid had Rodriguez ordered the broadcast.

However, it is not just to *punish* Rodriguez for the unauthorized showing of the broadcast under this subpart of § 605(a). Section 605(e)(3)(C)(ii) does provide an enhanced damages award in the event the "violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." In that event, "the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section." *Id.*

But J&J's evidence of commercial advantage or private financial gain is lacking. Its investigator reported that there was no cover charge when he came into the restaurant. There is no indication that the restaurant had extended its hours for the fight, or that food or beverage prices had been increased. There

was no evidence that the crowd size was any different on May 2 than it would have been any other Saturday night. There was no evidence that Rodriguez advertised that the fight would be shown in his restaurant, and given the placement of the television, it is highly unlikely that someone passing by would see that the fight was being shown in the restaurant. There is no evidence that Rodriguez was even among those in the restaurant waiting for the Mayweather-Pacquiao fight to start.

Although someone had to "willfully" act and do what was needed to intercept the broadcast, it does not necessarily follow that the purpose was for financial gain or commercial advantage. Importantly, there is no evidence that Rodriguez had previously intercepted a broadcast. This case is apparently not a case where Rodriguez is a repeat interceptor of satellite signals or cable programing, which would make an award of enhanced damages reasonably necessary to deter future conduct. See *Turrubiartes*, 2017 WL 840882, at *3.

The Court observes that a $3,000 fee to carry J&J's broadcast for a venue of no more than 35 patrons such as Victor's Mexican Restaurant is a cost significantly higher than any additional profit the restaurant could reasonably expect. That's not to excuse Rodriguez' conduct, but it does demonstrate that the $3,000 award in this case should function to deter any impulse Rodriguez may have about pirating another broadcast.

IT IS ORDERED:

1. J&J Sports Production, Inc.'s motion for default judgment (filing 16) is granted.

2.  Default judgment is entered in favor of plaintiff J&J Sports Production, Inc., and against defendants Victor Rodriguez and Victor's Mexican Restaurant jointly and severally.

3.  Plaintiff J&J Sports Production, Inc., shall recover from defendants Victor Rodriguez and Victor's Mexican Restaurant, jointly and severally, the sum of $3,000.00, with post-judgment interest thereon at the rate provided by 28 U.S.C. § 1961.

4.  The Clerk is directed to award costs in this matter.

5.  A separate judgment will be entered.

Dated this 13th day of November, 2018.

BY THE COURT:

John M. Gerrard
Chief United States District Judge